UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE SANTANA,

Petitioner,

v. Case No: 2:12-cv-515-FtM-38CM

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS and FLORIDA ATTORNEY GENERAL,

Respondents.[1]

_______________________________/

**OPINION AND ORDER[2]**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Santana ("Petitioner"), who is presently confined at the Hardee Correctional Institution in Bowling Green, Florida (Doc. 1). Petitioner,

[1] There "is generally only one proper respondent to a given prisoner's habeas petition." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). This is "the person with the ability to produce the prisoner's body before the habeas court." *Id.* at 435-36. When the petitioner is incarcerated and challenges his present physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." *Id.* at 436 (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

proceeding *pro se*, attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court for Lee County, Florida in case number 08-150450-cf for two counts of second degree felony murder, one count of armed burglary, and one count of attempted robbery with a deadly weapon. *Id.* Respondent filed a response to the petition, and Petitioner filed a reply (Doc. 24; Doc. 28).

Petitioner raises one claim in his petition. He argues that the trial court erred when it denied his motion to suppress statements made to police in the absence of *Miranda*[3] warnings (Doc. 1 at 3). Upon due consideration of the record, the Court concludes that the petition must be denied. Because the petition can be resolved on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I. Background

On February 12, 2008, Lee County Sheriff's Deputy Chester Hinton was on patrol when he received a "shots fired" call (Ex. 4 at 121). Deputy Hinton drove to the vicinity where the shots were heard, parked his car, and began walking down the street. *Id.* at 122. He heard a succession of more shots and then a shotgun blast. He saw Petitioner run out between two houses at the same time he heard the shots fired. *Id.* at 123. Deputy Hinton dove into a ditch for safety when he heard the shots. *Id.* at 123-24. Petitioner began to run towards Deputy Hinton who jumped out of the ditch and demanded that Petitioner show his hands. *Id.* Deputy Hinton noticed that Petitioner was wearing a bullet

[3] In *Miranda v. Arizona*, 384 U.S. 436, 445 (1966), the United States Supreme Court established that custodial interrogation cannot occur before a suspect is warned of his or her rights against self-incrimination.

proof vest. *Id.* at 125. Deputy Hinton was concerned about the possibility of additional gunfire so he pulled Petitioner into the ditch with him. *Id.* Deputy Hinton then patted down Petitioner and found a loaded gun in his back pocket. *Id.* Petitioner told Deputy Hinton that his (Petitioner's) friend had been shot and asked Deputy Hinton to help him. *Id.* at 127. Deputy Hinton was aware that there had been a series of grow-house robberies in the area, so he asked Petitioner whether this was a robbery. *Id.* Deputy Hinton testified:

> I initially said, I said, is this a grow house robbery, and he said yes. I said, are you the people in the house or are you the people robbing the house. He said he was the people robbing the house. And I said – I tried to get how many people were with him, and he made reference to his friend again. And then when another deputy got there to help me, then we secured him in the car after that initial exchange.

*Id*. Deputy Hinton said the entire exchange with Petitioner lasted "probably less than a couple minutes" and that he had not given Petitioner *Miranda* warnings when Petitioner was in the ditch because he was "frankly, worried about getting shot." *Id.* at 127, 129.

Petitioner was taken to the police station where he was provided with his *Miranda* warnings, and he made a statement to the police (Ex. 4).

## II. Procedural History

On March 13, 2008, Petitioner was charged by information with two counts of second degree felony murder, attempted burglary, and burglary with a firearm (Ex. 1).[4] Petitioner sought to suppress from use at trial his confession and any other statements made to law enforcement officers (Ex. 2). Petitioner argued that the questions asked by

[4] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on May 13, 2013 (Doc. 26).

Deputy Hinton did not involve questions of officer safety. *Id.* A hearing was held on the motion to suppress, and afterwards, it was denied (Ex. 4; Ex. 5).

After a jury trial, Petitioner was found guilty as charged (Ex. 5). He was sentenced to life in prison on each second degree murder and armed burglary count and to fifteen years in prison on the attempted robbery count (Ex. 8; Ex. 9). Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 13); *Santana v. State*, 75 So. 3d 1262 (Fla. 2d DCA 2011).

## III. Governing Legal Principles

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 134 S.Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that

contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When

reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

## IV. Discussion

Petitioner asserts that the trial court erred by not suppressing his statements to Deputy Hinton because Hinton failed to advise Petitioner of his *Miranda* rights prior to questioning him (Doc. 1 at 7).[5] Specifically, Petitioner urges that the questions posed to him "did not fall within the limited circumstances requirement set out in *New York v. Quarles*, 467 U.S. 649 [1984], as argued by the prosecution and relied upon by the state court of last resort to support denial of the motion to suppress." (Doc. 1 at 13). Petitioner also argues that the "public safety" exception set forth in *Quarles* did not apply because there was no "immediate danger" to the police or the public at the time Deputy Hinton questioned him (Doc. 1 at 13) (citing *Allen v. Roe*, 305 F.3d 1046 (9th Cir. 2002)).

In *Quarles*, the Supreme Court created a "public safety" exception to *Miranda*, allowing officers to question a suspect before giving a *Miranda* warning as long as their

[5] In his reply, Petitioner makes clear that he "challenges only the admission of the pre-*Miranda* statement involving Officer Hinton[.]" (Doc. 28 at 3) (emphasis in original). Petitioner does not challenge the admission of the statement he made at the police station after *Miranda* warnings were given. *Id.*

questions are "relate[d] to an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *Quarles*, 467 U.S. at 659 n. 8. In outlining the bounds of the exception, the Supreme Court stressed that it does not apply to "questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 659. Nor does it apply where circumstances require no "immediate action by the officers beyond the normal need expeditiously to solve a serious crime." *Id.* at 659 n. 8. The exception "allows officers to question a suspect without first [providing *Miranda* warnings] when necessary to protect either themselves or the general public." *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009) (quoting *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007)).

Upon consideration of the public safety exception set forth in *Quarles,* this Court concludes that this is not a situation where the state court's denial of Petitioner's motion to suppress was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702. Deputy Hinton's questions to Petitioner were objectively reasonable and were not designed to obtain incriminating evidence against Petitioner. Rather, the questions were designed to ensure that there were no other shooters in the vicinity. Deputy Hinton heard gunfire from two different guns, and Petitioner voluntarily told Deputy Hinton that his friend had been shot. Deputy Hinton was aware that there had been grow house robberies in the vicinity, and considering that only Petitioner had been apprehended at that point and that Petitioner was wearing a bullet proof vest, it was reasonable for the deputy to query whether Petitioner was the robber or the victim and to ask how many people were involved in the shooting. Although Deputy Hinton's

subjective motivation does not affect whether the public safety exception applies, no evidence adduced at the suppression hearing indicated that Deputy Hinton asked any questions out of an investigatory motive or in an effort to elicit incriminating responses from Petitioner.

Petitioner argues that pursuant to *Allen v. Roe*, 305 F.3d 1046 (9th Cir. 2002), the public safety exception is limited to situations in which there is "a need to protect from '**immediate danger**'" and that the testimony presented at the suppression hearing "does not support a showing of an immediate danger to any specific person." (Doc. 28 at 4-5) (emphasis in original). Petitioner's reliance on *Allen* is misplaced. First, contrary to Petitioner's assertion otherwise, *Allen* is not a Supreme Court decision. Rather, *Allen* was decided by the United States Court of Appeals for the Ninth Circuit and is therefore not "clearly established law" for federal habeas corpus purposes. *See* 28 U.S.C. § 2254(d)(1) (noting that "clearly established law" is determined by the Supreme Court of the United States). Next, Petitioner's argument that Deputy Hinton was no longer in "immediate danger" after he pulled Petitioner into the ditch and confiscated his gun misses the point. If there were other shooters in the area, they posed a continuing immediate danger to either Deputy Hinton or to the public. It was not unreasonable for the state court to conclude that Deputy Hinton's questioning of Petitioner was prompted by a reasonable concern for public safety. Accordingly, the state court's denial of the suppression motion was not contrary to clearly established federal law, and Petitioner is not entitled to federal habeas relief. 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V. Certificate of Appealability[6]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Florida Attorney General is **DISMISSED** from this action as a named Respondent;

2. The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Jose Santana (Doc. 1) is **DENIED**;

3. This case is **DISMISSED** with prejudice;

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

4. Petitioner is **DENIED** a certificate of appealability; and

5. The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 22nd day of January, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: OrlP-4
Copies: Jose Santana
Counsel of Record